Les SCHWIMLEY and Les Schwimley Motors, Inc., a California corporation, Plaintiffs-Appellants,

v.

CHRYSLER MOTORS CORP., a Delaware Corp., and Chrysler Corporation, a Delaware Corp., Defendants-Appellees.

No. 71–2587.

United States Court of Appeals, Ninth Circuit.

July 11, 1973.

Bryan D. Flynn, of Mix, Flynn & Galloway, Sacramento, Cal., Sidney W. Robinson, Reno, Nev., for plaintiffs-appellants.

Vargas, Bartlett & Dixon, Reno, Nev., Walter B. Maher, Highland Park, Mich., for defendants-appellees.

Before KOELSCH and GOODWIN, Circuit Judges, and BYRNE, Sr.,* District Judge.

WILLIAM M. BYRNE, Sr., District Judge:

On June 19, 1969, the appellants filed their complaint and alleged that, during May of 1958, the appellees fraudulently induced them to enter into a written dealer agreement for the resale of De Soto automobiles at a time when the appellees secretly intended to discontinue the production of such automobiles. Both compensatory and punitive damages were sought.

At a Pre-Trial Conference November 20, 1970, the appellants and the appellees stipulated to a Pre-Trial Order which limited the issues of fact remaining to be litigated. Among those issues were the following:

"(c) Whether [appellees] formulated secret plans to discontinue production of De Soto automobiles prior to May, 1958.

. . . . . .

"(e) Whether [appellees] did not intend to carry out this contract because they had formed secret plans to discontinue De Soto."

On May 10, 1971, this action came to trial. The only evidence which the appellants produced was Les Schwimley's own testimony, the testimony of one Bud Moon, and several items of documentary evidence.

Schwimley testified to the following: During May of 1958, he and his corporation entered into a written "direct dealer agreement" with the appellees whereby the latter agreed to supply them with new De Soto and Plymouth automobiles so that they could retail them from a certain facility located in Reno, Nevada. In reliance thereon, he and his corporation spent considerable sums of money in purchasing that facility, hiring personnel to operate it, and advertising those makes of automobiles. During the summer of 1959, they incurred additional expenses by moving from that facility to a larger one across town. This move was made because the appellees' district representative "pressured" them into furnishing a better representative building so that the De Soto and Plymouth automobiles could be properly displayed to the public. In March, 1960, he heard rumors to the effect that production of De Soto automobiles was going to be discontinued. However, the appellees did not formally notify him of that fact until November 18, 1960. Consequently, the discontinuance of production caused him and his corporation to suffer severe financial losses (i. e., wasted advertising,

* Honorable William M. Byrne, Sr., United States Senior District Judge, Central District of California, sitting by designation.

lost sales, etc.). In August, 1963, after almost three years of struggling to make a profit with the single-line Plymouth dealership, he and his corporation agreed to terminate their contract with the appellees.

Bud Moon testified to the following: He was the chief car salesman for the appellants during the entire five year period that they were in business. He worked on a commission basis. After the production of De Soto automobiles was discontinued, his income was curtailed considerably.

Among the several items of documentary evidence which the appellants produced, only Exhibits 18, 19, and 20 are pertinent to this appeal. Each of those documents bears a date that is at least *three months subsequent to* the date that the appellants executed the direct dealer agreement (i. e., May 18, 1958). Exhibit 18 was dated August 18, 1958, and entitled "Market Representation Plan." It proposed that the production of De Sotos be discontinued. Exhibit 20 was dated August 28, 1958, and entitled "Proposed Market Representation and Product Program for Chrysler Corporation." It offered several alternatives for implementing the above-mentioned proposal. It was prepared by the appellees' corporate planning group working in conjunction with their automobile sales group. Exhibit 19 was dated September 17, 1958, and entitled "Minutes, Administrative Committee Meeting." Its title is self-explanatory. It indicated that the members of the administrative committee discussed the above-mentioned proposal but took no affirmative action on it.

When the appellants moved to admit the three exhibits into evidence, the appellees objected on the ground that the exhibits did not pertain to any of the issues set forth in the Pre-Trial Order. The appellants argued to the contrary. The court admitted the exhibits.

In addition, during the appellants' argument on the above-mentioned motion, they moved to amend the pleadings to conform to the evidence. This motion was denied.

After the appellants rested their case, the appellees moved both to strike the exhibits from evidence and for an involuntary dismissal (a directed verdict). The district court judge denied the motion to strike and granted the motion for a directed verdict.

■ The appellants and the appellees agree on the "standard" controlling a district court's consideration of a motion for a directed verdict. That standard is that the evidence must be viewed in the light most favorable to the party against whom the motion is made. Shafer v. Mountain States Telephone and Telegraph Co., 335 F.2d 932, 934 (C.A. 9, 1964). A motion for a directed verdict cannot properly be granted unless "the evidence is such that without weighing the credibility of witnesses there can be but one reasonable conclusion as to the verdict." Brady v. Southern Railway Company, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943).

The appellants and the appellees *disagree* as to whether or not the court "applied" the standard properly. More specifically, they disagree as to whether or not "a reasonable man" could have found in the appellants' favor on the basis of the evidence which was produced.

The appellants emhasize the fact that the three exhibits specifically discussed discontinuing the production of De Sotos. They assert that, even though those exhibits were subsequent to May 18, 1958, they constitute "some evidence" from which a reasonable man could *infer* that the appellees possessed the requisite fraudulent intent prior to that date. They argue that, since the standard requires that all reasonable inferences be drawn in favor of the party against whom the motion is made, the court committed error by granting the motion.

■■ A fraudulent intent to act or not to act in a certain manner (i. e., to make an agreement while not intending to perform it) must be preceded by a

purposeful *decision* to act or not to act in that manner. The three exhibits showed only that the appellees discussed a proposal to discontinue production of De Sotos. They did not show that the appellees had previously *decided* to adopt that proposal. In fact, the failure of the administrative committee to take any affirmative action at their meeting would lead one to derive a contrary inference, i. e., that the appellees had *not* previously decided to adopt the proposal.

It is apparent the district court denied the appellants' motion to amend their pleadings to conform to the evidence for the same reason that it granted the directed verdict, i. e., there was no evidence that the appellees decided to discontinue De Soto until November, 1960.

The district court correctly found that the evidence produced by the appellants neither directly showed nor could a reasonable man have inferred that it showed that the appellees had *decided* to discontinue De Soto prior to either May 10, 1958, or the summer of 1959.

Affirmed.